Filed 4/24/26  Senseman v. Mimi Real Properties CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MARK A. SENSEMAN et al., | D084658 |
| Plaintiffs and Respondents, | (Super. Ct. No. 27-2021-00003304-CU-OR-CTL) |
| v. | |
| MIMI REAL PROPERTIES, LLC et al., | ORDER MODIFIYING OPINION, DENYING REHEARING AND DENYING REQUEST FOR PUBLICATION |
| Defendants and Appellants. | |
| | NO CHANGE IN JUDGMENT |


THE COURT:

It is ordered that the opinion filed herein on March 26, 2026, be modified as follows:

1. On page 2, in the second sentence of the first paragraph, both instances of the name "Phyliss" are deleted and replaced with "Phyllis."

2. On page 2, the second paragraph beginning with "The Sensemans sued the Joneses," is deleted and replaced with the following paragraph:

The Sensemans sued the Joneses after the Joneses began using their unit as a short-term rental. Before trial, the court ruled in favor of the Joneses on one of the Sensemans' claims for nuisance and dismissed it. The jury then found in favor of the Sensemans on the remaining claim for nuisance and on their claims for breach of the homeowner association's covenants, conditions, and restrictions (CC&Rs). The trial court entered a permanent injunction directing the Joneses to take measures to abate excessive noise caused by frequent rental turnover.

3. On page 3, in the last sentence of the third paragraph, the words "shorter term" are deleted and replaced with "shorter-term."

4. On page 4, in the fifth sentence of the first full paragraph, the name "Phyliss" is deleted and replaced with "Phyllis."

5. On page 5, section II of the PROCEDURAL AND FACTUAL BACKGROUND of the opinion, titled "*Lawsuit and Jury Trial*," this entire section is deleted and replaced with the following, to include new footnotes 1 and 2, which will require renumbering of all subsequent footnotes:

II.

*Lawsuit and Jury Trial*

In January 2021, the Sensemans sued the Joneses.[1] The verified complaint asserted "cause[s] of action" for breach of the HOA's CC&Rs, nuisance, and "declaratory and injunctive relief." (Capitalization omitted.) The complaint divided the nuisance "[c]ause of [a]ction" into two "[c]ount[s]."[2]

---

[1] The complaint listed Five Star Vacation Rentals as an additional defendant. Five Star Vacation Rentals was used as a DBA by the Joneses, but did not exist as a separate entity.

[2] The meaning of " 'cause of action' " and " 'count' " depends on context and can be unclear. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 395 [cause of action]; *Slater v. Blackwood* (1975) 15 Cal.3d 791, 796 [counts].) "In a broad sense, a 'cause of action' is the invasion of a primary right, such as injury to person or to property. In more common usage, 'cause of action' means a

Relevant here, the asserted cause of action for breach of the CC&Rs alleged the Jones violated the CC&Rs in two ways. *First*, the Sensemans alleged the Joneses breached two provisions of the CC&Rs because their tenants created 'excessive noise' and 'vibration.' The provisions prohibited the creation of a nuisance through excessive noise and other behavior:

> 4.5 INTERFERENCE WITH OTHER OCCUPANTS. No Living Unit or Exclusive Use Common Area shall be used in such manner as to obstruct or interfere with the enjoyment of occupants of other such areas or annoy them by unreasonable noise or otherwise, nor shall any nuisance be committed or permitted to occur in any Unit nor on the Common Area.

> 4.9 OFFENSIVE ACTIVITIES AND CONDITIONS. No noxious or offensive activity shall be carried on in any Living Unit, or on the Common Area, nor shall anything be done therein which may be or become an annoyance or nuisance to the other Owners other than construction or repair of improvements made at the Board's instruction, or at Declarant's instruction.

*Second*, the Sensemans alleged the Joneses breached three provisions of the CC&Rs because their use of the unit as a short-term rental property violated state and local zoning laws. Two of

---

group of related paragraphs in the complaint reflecting a separate theory of liability." (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 12.) Significantly, "[t]he manner in which a plaintiff elects to organize his or her claims within the body of the complaint is irrelevant to determining the number of causes of action alleged under the primary rights theory." (*Hindin v. Rust* (2004) 118 Cal.App.4th 1247, 1257.)

We acknowledge that our use of the term "cause of action" in our original opinion was imprecise and may have caused confusion in some instances. Our lack of precision is of no moment to our analysis of the trial court's attorney fees award because the test we apply here is based on the parties' litigation objectives, not their success or failure with respect to any particular cause of action. Nevertheless, in response to the Sensemans' petition for rehearing, which misapprehends our legal analysis, we have revised our use of the term in this modified opinion to better convey our reasoning.

the three zoning-related provisions prohibited zoning violations directly:

> 4.1 USE OF CONDOMINIUMS. Each Condominium shall be improved, used and occupied for private, single-family dwelling purposes only, and no portion thereof, nor the Common Area, shall be used for any commercial purpose, *except as may be allowed by the zoning regulations of the City of San Diego* or any variance obtained therefrom. (Italics added.)

> 11.3 VIOLATION OF LAW. Any violation of any state, municipal or local law, ordinance or regulation pertaining to the ownership, occupation or use of any Condominium within the Project is hereby declared to be a violation of this Declaration and subject to any or all of the enforcement procedures herein set forth.

The third provision prohibited owners from leasing their units for "hotel purposes":

> 4.2 LEASE OF CONDOMINIUMS. . . . No Owner shall lease his Condominium for transient or hotel purposes. Any lease which is either for a period of less than thirty (30) days or pursuant to which the Lessor provides any services normally associated with a hotel, shall be deemed to be for transient or hotel purposes.

The Sensemans contended the Joneses violated this third provision by renting their unit for periods of less than 30 days from the time they purchased the unit until the provision was amended in December 2020 to strike the 30-day minimum and allow short-term vacation rentals. In addition, in the Sensemans' view, the definition of "hotel purposes" in the third provision incorporated the definition of "hotel" that appears in a local municipal code zoning ordinance. Based on that definition, the Sensemans contended the amendment to the provision was invalid.

The cause of action for nuisance, as alleged, asserted the Joneses created a nuisance in two ways, both of which tracked the allegations of breach of the CC&Rs. *First*, in count 1, the Sensemans alleged the Joneses' commercial use of their unit as a

4

short-term rental was a nuisance per se because the condominium complex was in a residential zone where state and local law prohibited commercial use and hotel vacation rentals. *Second*, and "[a]lternatively," the Sensemans alleged in count 2 that the Joneses created a private nuisance by "caus[ing] vibrations and noises that are offensive to the senses and result in [the] loss of free use and loss of enjoyment by [the] Senseman[s] . . . so as to interfere with their comfortable use and enjoyment of life . . . in and at the . . . [p]roperty." They alleged, also in count 2, that the noise was a nuisance per se because it was excessive in violation of local noise ordinances.

In their claim for relief, including what they styled as a "cause of action" for "declaratory and injunctive relief," the Sensemans sought damages for personal injury, loss of use, and diminution in the value of their unit. (Capitalization omitted.) They also sought injunctive relief in the form of a judicial declaration that the Joneses' activities "violated San Diego residential zoning restrictions and noise ordinances." They alleged there was "*no other option* but to suspend the alleged unlawful and nuisance activities so as to allow for [the Sensemans] to be able to use and enjoy their subject property." (Italics added.) They specifically sought a permanent injunction directing the Joneses "to stop and cease all commercial and vacation rental enterprise" in their unit.

In a verified answer, the Joneses denied the allegations and asserted several affirmative defenses. They specifically denied that they violated state and local zoning laws and the zoning-related CC&Rs by using their unit as a short-term vacation rental.

Before trial, both parties asked the trial court to address the Sensemans' allegations that the Joneses violated state and municipal zoning laws by using their unit as a short-term vacation rental. As alleged in the complaint, these allegations supported (1) the first count of the nuisance cause of action, (2) the claim the Joneses breached sections 4.1 and 11.3 of the CC&Rs, and (3) part of the claim the Joneses breached section 4.2 of the CC&Rs. The parties extensively briefed this question in their joint trial readiness report, trial briefs, and motions in limine. In doing so, they addressed the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.) and San Diego Municipal Code (SDMC) sections 131.0420 and 131.0422.

The parties also asked the trial court to address the Sensemans' allegations that the Joneses created a nuisance by violating the SDMC noise ordinances, specifically SDMC sections 59.5.0401 and 59.5.0501. As alleged in the complaint, these allegations supported the nuisance per se theory that was asserted in the second count of the nuisance cause of action. The Joneses contended the Sensemans did not have standing to enforce the ordinances.

In November 2022, the court ruled in favor of the Joneses on both questions. In accordance with this ruling, the jury was not instructed to consider whether the Joneses breached sections 4.1 and 11.9 of the CC&Rs by using their unit as a short-term vacation rental. The jury was instructed to consider only (1) whether the Joneses breached sections 4.5 and 4.9 by creating unreasonable noise in their unit, and (2) whether they violated the plain language of section 4.2 before it was amended by renting out the premises for periods less than 30 days. They were not asked to determine whether section 4.2 violated SDMC zoning ordinances.

As for the nuisance cause of action, the court denied the Sensemans' request to instruct jurors on a nuisance per se theory with respect to the allegations of excessive noise in the second count. And it dismissed the first count, based on alleged zoning violations, entirely. Pursuant to the parties' stipulation, the court treated this ruling as having been made pursuant to a motion for dismissal by the Joneses.

The case proceeded to trial in December 2022 and lasted four days. The jury found for the Sensemans on their causes of action for private nuisance and breach of the non-zoning related CC&Rs (sections 4.5 and 4.9, and section 4.2 in part). On December 9, the jury awarded the Sensemans damages for loss of use in the amount of $533.30, for out-of-pocket loss in the amount of $1,186.85, and for mental distress in the amount of $500.

6. On page 9, the second sentence of the first full paragraph beginning with "The trial court had ruled that short-term rentals" is deleted and replaced with the following:

> The trial court had ruled that short-term rentals in the complex were not prohibited by the laws in effect from 2017 to 2022, and therefore not prohibited by the CC&Rs

6

(sections 4.1 and 11.9, and section 4.2 in part). The court dismissed the nuisance per se claim that was founded on allegations that the business violated state and local laws.

7. On page 10, the second to the last sentence of the first paragraph beginning with "As the court observed," is modified to read:

> As the court observed, "the relief originally sought for the injunction in the complaint was draconian, which is cease and desist basically . . . doing short-term rentals."

8. On page 11, the third sentence in the last paragraph beginning with "Important here, the proposed judgment" is modified to read:

> Important here, the proposed judgment made no mention of the court's ruling that the Joneses' use of the unit did not breach the CC&Rs by violating state or local zoning laws, nor of its dismissal of the Senseman's claim for nuisance per se based on the alleged violation of those laws.

9. On page 19, section IV of the opinion, titled "*Attorney Fees,*" this entire section is deleted and replaced with the following (including new footnotes 9–11):

## IV.

### *Attorney Fees*

As recounted, after the jury trial, the Sensemans sought an award of attorney fees and costs. The trial court ruled on the motion in a minute order in May 2024, and later incorporated that order into its final judgment. The motion was made pursuant to section 5975 and pursuant to section 1717 based on an attorney fee provision in the CC&Rs. The court found the Sensemans were the prevailing parties under section 5975 and awarded them $138,875 in attorney fees. In so ruling, the court stated, "[The Sensemans] achieved their main litigation goal, the abatement of the nuisance caused by [the Joneses'] operation of a short-term rental unit. . . . [The Joneses] did not obtain anything, and therefore, in accordance with the [c]ourt's prior order, [the Sensemans] are the prevailing parties."

7

The Davis-Stirling Common Interest Development Act (Davis-Stirling Act) governs actions to enforce the governing documents of condominiums and other common interest developments. (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 258 (*Rancho Mirage*).) In such actions, the Davis-Stirling Act provides for the recovery of attorney fees as follows: "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (§ 5975, subd. (c).) Whenever the statutory conditions have been satisfied, the prevailing party is entitled to fees as a matter of right. (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 590.)

The Joneses contend the trial court erred when it determined the Sensemans were the prevailing parties within the meaning of section 5975. We agree.

Our review of this issue is for abuse of discretion. (*Artus v. Grabercy Towers Condominium Ass.* (2022) 76 Cal.App.5th 1043, 1050.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.) Because the trial court here based its decision on an erroneous factual finding, and erroneously believed it was not ruling prematurely, we agree with the Joneses there was an abuse of discretion.

A.    *The Sensemans Were Not Automatically Entitled to Prevailing Party Status*

The Sensemans contend they were automatically entitled to attorney fees as a matter of law because they prevailed on each of their causes of action as they were set forth in the complaint. They are incorrect.

When determining who is a prevailing party under the Davis-Stirling Act, courts have generally followed the analysis that is used to determine the prevailing party when attorney fees are awarded in breach of contract actions pursuant to section 1717. (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 774 (*Almanor*).) In the context of section

8

1717 awards, trial courts have no discretion to deny attorney fees to a defendant who has obtained a "simple, unqualified victory." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876, 877 (*Hsu*); see *id.* at pp. 875—877.) "Similarly, a plaintiff *who obtains all relief requested* on the only contract claim in the action must be regarded as the party prevailing on the contract for purposes of attorney fees under section 1717." (*Id.* at p. 876, italics added.) We agree with the Sensemans that these principles apply to attorney fee awards under the Davis-Stirling Act.

But here, the Sensemans did not obtain all the relief they requested with respect to the claims they asserted for breach of the CC&Rs, which are the only relevant claims, and so, we do not agree with our dissenting colleague that they were entitled to fees as a matter of law.[9] The Sensemans asserted the Joneses violated the CC&Rs based on two distinct sets of provisions. Based on one set of provisions, they claimed the Joneses breached the CC&Rs by creating excessive noise in their unit. Based on the second set of provisions, they claimed the Joneses breached the CC&Rs by using their unit as a short-term rental in violation of a host of state and local zoning laws.

With respect to their claim for breach of the CC&Rs that relate to zoning, the Sensemans sought "preliminary and permanent injunctive relief to enforce the CC&Rs and prohibit [the Joneses] from utilizing [their condominium unit] as a commercial rental and hotel property." The trial court ruled that the Joneses' use of their property as a short-term rental did not violate state or local law, and the Sensemans, as a result, were not entitled to an expansive injunction prohibiting their vacation rental business entirely. The Sensemans thus manifestly did not "obtain[ ] a simple, unqualified victory by completely prevailing

_____

[9] Because we do not agree the trial court had an obligation to choose the Sensemans as the prevailing party, we conclude the case law cited by our dissenting colleague, which discusses equitable adjustments to the amount of attorney fees awarded in such situations, is inapposite to our analysis. We observe, in addition, that neither party asked us to address the reasonableness of the fee award and whether it should be adjusted downward based on the Senseman's "degree[ ] of success." (Dis. opn., *post*, at p. 6.) It is not our role to act as advocates on behalf of the parties by conducting our own legal research and analysis. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

9

on or defeating all contract claims in the action." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 (*Scott*) [holding that a plaintiff who "sought to prove more than $2 million in damages" and "succeeded in establishing only about $440,000 in damages . . . did not achieve all of its litigation objectives, and thus [was] not automatically a party prevailing on the contract for purposes of section 1717"]; see also *Hsu, supra,* 9 Cal.4th at pp. 874–876 [discussing cases where the nature of the relief obtained by the parties, including injunctive relief, led to a conclusion there was no prevailing party under § 1717].)  Thus, we disagree with the contention the Sensemans were the prevailing party as a matter of law.

B.      *The Trial Court Abused Its Discretion*

"If neither party achieves a complete victory[,] . . . it is within the discretion of the trial court to determine which party prevailed . . . or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees."[10]  (*Scott, supra,* 20 Cal.4th at p. 1109.)  This step of the analysis "focuses on who prevailed 'on a practical level' by achieving its main litigation objectives." (*Rancho Mirage, supra,* 2 Cal.App.5th at p. 260.)  Courts "compare *the relief awarded* on the contract claim or claims *with the parties' demands* on those same claims *and their litigation objectives* as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu, supra,* 9 Cal.4th at p. 876, italics added.)  Thus, "[t]he prevailing party determination is . . . made . . . by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " (*Ibid.*)  Important here, the determination is to be made only upon *final* resolution of the relevant claims.  (*Ibid.*)

Starting with the trial court's legal error, the court erroneously treated the 2023 ruling as its final judgment.  But as we have explained, the 2023 ruling expressly left open for decision the precise details of the abatement injunction that were essential to a final determination of the parties' rights.  Without a final determination of those rights, it was premature for the court to "compare the relief awarded . . . with the parties'

---

[10]     We continue to follow the analysis that is used to determine the prevailing party when attorney fees are awarded in breach of contract actions pursuant to section 1717.  (*Almanor, supra,* 246 Cal.App.4th at p. 774.)

demands . . . and their litigation objectives." (*Hsu, supra*, 9 Cal.4th at p. 876.) Most significant here, the court had not yet heard argument and not yet ruled that it could not enjoin the Joneses from operating the short-term vacation rental business in their unit because the Sensemans did not prevail on their claim the Joneses breached sections 4.1, 4.2 (in part), and 11.9 of the CC&Rs nor on their corresponding claim for nuisance per se based on the same allegations that the business violated state and local zoning laws. "[A] disposition that rests on an error of law constitutes an abuse of discretion." (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)

Turning to the trial court's factual findings, we find no evidentiary support for the court's determination that the Joneses "did not obtain anything" in terms of their litigation objectives. The Joneses' stated litigations objectives were: (1) "a determination that they [were] legally using their property as a short-term rental" (2) "to continue operating their property as a short-term rental," (3) "[to] minimize the $524,186.85 claimed by the Sensemans," and (4) "[to] minimize any modifications to their property." On this record, it is not reasonably subject to dispute that the Joneses achieved their main litigation goal of keeping their rental business in operation as a going concern—numbers one and two on their list—or that they had some other, undisclosed goal. "A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.)

The defeat of the Senseman's zoning-law-based claims, moreover, was critical to the defeat of *their* main litigation objective. As our dissenting colleague points out (dis. opn., *post*, at p. 1), the trial court determined that the Sensemans' main litigation goal was "the abatement of the nuisance caused by [the Joneses'] operation of a short-term rental" in their condominium unit. Although the record supports this finding of fact as a general proposition, it is important to consider the details of that goal. The Sensemans specifically sought an abatement injunction prohibiting the Joneses from operating their short-term rental business *entirely*—a complete ban. The Sensemans alleged in the complaint that there was "no other option but to suspend the alleged unlawful and nuisance activities so as to allow for [them] to be able to use and enjoy their subject property." And they sought a permanent injunction directing the Joneses "to stop and

11

cease all commercial and vacation rental enterprise" in their unit. The Sensemans were unable to achieve this specific goal precisely because the trial court's ruling that their zoning-law-based claims were invalid meant the court could not enjoin the Joneses entirely from operating a short-term rental business. (§ 3482 ["[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance"].)

After the trial court concluded it could not enjoin the Joneses from operating a short-term rental business, the Sensemans downgraded their main litigation goal and asked the trial court to enjoin short-term rentals by the Joneses until "physical improvements [to the property] are made . . . to ensure that noise an[d] sound transmission reductions have been instituted in a sufficient manner to the satisfaction of the [c]ourt." (Boldface omitted.) They sought, as an alternative, "significant physical modifications" to the unit and rental use restrictions consisting of (1) installation of "sound deadening, shockproof, Sorbothane material between metal angle iron brackets and pre-cast concrete stair treads" in the stairwell, (2) payment for regular inspections of the Sorbothane material, "not less than once per year," (3) removal and replacement of the carpet and pad throughout the condominium unit, (4) replacement of "all hard-surface flooring," (5) installation of "cabinet door bumpers or soft-closing restrictions on all kitchen cabinet doors and drawers," (6) removal of the Joneses' trash compactor, (7) occupancy restriction to "6 persons maximum for all reservations and occupancy," (8) prohibition of the use of "a pull-out sofa bed in the living room," (9) "a minimum 3-night stay by any reservation," and (10) notification to guests that "occupants may not arrive (move-in) or depart (move-out) except between the reasonable hours of 7:00 a.m. and 10:00 p.m." Of the 10 demands, the trial court ordered only three: replacement of the living room carpet pad, posting of a sign at the top of the stairwell requesting "calm and quiet" when ascending and descending the stairway, and, as part of the rental agreement for the condominium, a request to renters to "make every effort" to refrain from generating "inordinate noise" in the rental unit and to "keep the noise level down" when using the stairs. (Italics omitted.) The court also specifically ruled that it had no jurisdiction to make the changes sought by the Sensemans to the

12

stairwell because it was a common area belonging to the community as a whole.

In the Joneses' view, this was a "nominal outcome" even with respect to the Sensemans' revised litigation goals. We agree, and conclude the trial court erred when it ruled prematurely before it could consider this extraordinarily limited result as against years of litigation and $138,000 in attorney fees. But more important, we conclude it would be arbitrary and capricious in the face of this record to rule that the Sensemans, on balance, prevailed over the Joneses. (See *Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1155.) We conclude remand is unnecessary for this reason.[11]

There is no change in judgment.

Respondent's petition for rehearing is denied.

Respondent's request for publication filed April 15, 2026, is denied.

 

                     O'ROURKE, Acting P. J.

Copies to: All parties

---

[11] Although not necessary to our decision, we also agree with the Joneses that the Sensemans did not achieve their litigation goals, as a practical matter, in terms of damages either. They originally sought approximately $350,000 in damages for breach of the CC&Rs. But in "stark contrast," the jury awarded total damages of $2,220.15 for the breach, consisting, of loss of use in the amount of $533.30, and out-of-pocket loss in the amount of $1,186.85. As the Joneses observe, this amount could have been "achieve[d] in Small Claims court." (C.f., *Harris v. Rojas* (2021) 66 Cal.App.5th 817, 824–826; *id*. at p. 824 ["recovering five or six thousand dollars on a demand for $200,000 obviously is not a 'simple, unqualified' win"].)

13

Filed 3/26/26  Senseman v. Mimi Real Properties CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARK A. SENSEMAN et al., | D084658 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2021-00003304-CU-OR-CTL) |
| MIMI REAL PROPERTIES, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth Medel, Judge.* Affirmed with modifications.

Goode Hemme, Jerry D. Hemme; Williams Iagmin and Jon R. Williams for Defendants and Appellants.

Craig A. Sherman for Plaintiffs and Respondents.

---

*       Retired judge of the San Diego Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

INTRODUCTION

This appeal arises from a dispute between the owners of two condominium units, with one located directly above the other. The lower unit was owned by Phyliss and Mark Senseman, individually and as trustees of the Mark A. Senseman and Phyliss M. Senseman Trust Dated September 11, 2014 (Sensemans). The upper unit was owned by Mimi Real Properties, LLC (Mimi Properties), and its sole managing members, Michael Jones and Lacy Jones (collectively, Joneses).

The Sensemans sued the Joneses after the Joneses began using their unit as a short-term rental. The court ruled in favor of the Joneses on the Sensemans' cause of action for negligence per se and dismissed it. The jury then found in favor of the Sensemans on causes of action for nuisance and breach of the homeowner association's covenants, conditions, and restrictions (CC&Rs). The trial court entered a permanent injunction directing the Joneses to take measures to abate excessive noise caused by frequent rental turnover.

On appeal, the Joneses contend (1) certain terms of the injunction are fatally vague, (2) certain components of the jury's damages award are unsupported by substantial evidence, and (3) the trial court abused its discretion when it found the Sensemans to be the prevailing party for purposes of awarding attorney fees. We disagree with the first two contentions but agree with the third. We direct the trial court to modify the judgment by striking the attorney fees award and affirm the judgment as modified.

2

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Dispute*

The Ensenada Del Sur condominium complex is located "three buildings down from the ocean" in the Mission Beach community of San Diego. It contains four units and is governed by a homeowner's association (HOA) and its CC&Rs. Since 1999, the Sensemans have owned one of the lower-level units, which they use as a summer vacation home. The rest of the year they rent it out to local college students.

In July 2017, the Joneses bought the unit directly above the Sensemans with plans to rent it out though Airbnb and Vacation Rentals by Owner (VRBO). They made some repairs and renovations, and began leasing it about a week after closing escrow. A few months later, they transferred title to Mimi Properties with plans to operate the short-term rental business through that entity.

The CC&Rs contain provisions that prohibit interfering with the use and enjoyment of the common areas and creating "an annoyance or nuisance" in a unit or common area. When the Joneses purchased their unit, the CC&Rs also contained a 30-day minimum lease restriction. The Joneses did not comply with this restriction and rented the unit to vacationers on a much shorter term basis.

According to the Sensemans, starting in 2017, they regularly heard "pounding" and "thuds" from the Joneses' unit above as "if something [was] hitting the ground." They heard doors slamming and "kids playing with balls." They could hear a rollaway bed being set up and it was loud. They also heard a lot of noise from the stairwell leading to the Joneses' unit while vacationers were moving in and out. The vacationers had "an awful lot of

3

gear," and they made a lot of noise pulling "big roller bags . . . up those stairs." The Sensemans heard kids running across the stairs when they went in and out of the Joneses' unit. The sound from the stairs in particular "just reverberate[d] up and down" the hallway.

The noise occurred frequently. Mark Senseman explained: "We can get move-ins or move-outs all day or night, depending when people fly in or drive in to the coast, but again, we can be woken up in the middle of the night. It can happen while we're on a Zoom call with our clients. It—there's just no way to say, you know, this is a time where we can avoid it, it's just constant." Phyliss Senseman said the sound was emotionally stressful. She explained: "It's draining, it's stressful, it's exhausting. . . . [I]t doesn't stop. . . . [A]s I think about it now, my blood is quivering in my body because it is . . . so maddening."

The Sensemans, for the most part, did not call the Joneses to complain about the noise for three years. But they began complaining regularly in the summer of 2020 when they were living full-time in their unit during the summers because of the COVID-19 pandemic. They hired counsel to send a cease-and-desist letter. And they began calling Michael Jones two to three times per week when noisy renters bothered them, although the calls did not occur every week. The Sensemans acknowledged that some of the Joneses' renters were quiet.

Lacy Jones said she responded to complaints by the Sensemans by calling the renters and asking them to comply with the local noise ordinance and the unit's "house rules," which provide for "quiet hours" after 10:00 p.m. She informed renters with young children "to please be aware there are people below and to please minimize the running, the jumping." Renters were also told to keep the television sound at a normal volume, and there

4

were to be "[n]o parties, no gatherings, only the people that are staying there are supposed to be inside the unit."

In August 2020, the HOA voted to amend the CC&Rs to lower the minimum rental duration period from 30 days to three days. The vote was three to one with the Sensemans voting against the change. But because of a procedural mistake, the HOA had to hold a second vote in December 2020. This time, the amendment succeeded, with three units in favor and the Sensemans abstaining from voting.

## II.

### *Lawsuit and Jury Trial*

In January 2021, the Sensemans sued the Joneses.[3] The verified complaint asserted causes of action for private nuisance, nuisance per se, and breach of the HOA's CC&Rs.

On the cause of action for breach of the CC&Rs, the Sensemans alleged the Joneses breached three of its provisions because their use of the unit as a short-term rental property violated state and local zoning laws. In relevant part, the three zoning-related provisions stated as follows:

> 4.1 USE OF CONDOMINIUMS. Each Condominium shall be improved, used and occupied for private, single-family dwelling purposes only, and no portion thereof, nor the Common Area, shall be used for any commercial purpose, *except as may be allowed by the zoning regulations of the City of San Diego* or any variance obtained therefrom. (Italics added.)

> 4.2 LEASE OF CONDOMINIUMS. . . . No Owner shall lease his Condominium for transient or hotel purposes.[4]

---

[3] The complaint listed Five Star Vacation Rentals as an additional defendant. Five Star Vacation Rentals was used as a DBA by the Joneses, but did not exist as a separate entity.

> 11.3 VIOLATION OF LAW. Any violation of any state, municipal or local law, ordinance or regulation pertaining to the ownership, occupation or use of any Condominium within the Project is hereby declared to be a violation of this Declaration and subject to any or all of the enforcement procedures herein set forth.

In addition, the Sensemans alleged the Joneses breached two other provisions of the CC&Rs because their tenants created "excessive noise" and "vibration." The provisions prohibited the creation of a nuisance through excessive noise and other behavior:

> 4.5 INTERFERENCE WITH OTHER OCCUPANTS. No Living Unit or Exclusive Use Common Area shall be used in such manner as to obstruct or interfere with the enjoyment of occupants of other such areas or annoy them by unreasonable noise or otherwise, nor shall any nuisance be committed or permitted to occur in any Unit nor on the Common Area.

> 4.9 OFFENSIVE ACTIVITIES AND CONDITIONS. No noxious or offensive activity shall be carried on in any Living Unit, or on the Common Area, nor shall anything be done therein which may be or become an annoyance or nuisance to the other Owners other than construction or repair of improvements made at the Board's instruction, or at Declarant's instruction.

Finally, at the time of trial, the Sensemans contended the Joneses violated the provision in the CC&Rs that prohibited rentals for a period of less than 30 days from the time they purchased the unit until it was amended in December 2020:

> 4.2 LEASE OF CONDOMINIUMS. . . . Any lease which is either for a period of less than thirty (30) days or pursuant to which the

---

4    The December 2020 amendment to the CC&Rs struck this language from Section 4.2. But the Sensemans contended the amendment was "void or voidable" because it purportedly conflicted with a San Diego Municipal Code (SDMC) ordinance. In their view, the ordinance required the HOA to prohibit "hotel use."

Lessor provides any services normally associated with a hotel, shall be deemed to be for transient or hotel purposes.

The two nuisance causes of action were founded on the same operative facts as the cause of action for breach of the CC&Rs. The Sensemans alleged the Joneses' use of their unit as a short-term rental was a nuisance per se because the condominium complex was in a residential zone that precluded commercial use and hotel vacation rentals. They alleged the Joneses' use of the unit was a nuisance per se for the additional reason that such use resulted in their tenants regularly creating noise in excess of that allowed by law. In the alternative, the Sensemans alleged the Joneses created a private nuisance by "caus[ing] vibrations and noises that are offensive to the senses and result in [the] loss of free use and loss of enjoyment by [the] Senseman[s] . . . so as to interfere with their comfortable use and enjoyment of life . . . in and at the . . . [p]roperty."

In their claim for relief, the Sensemans sought damages for personal injury, loss of use, and diminution in the value of their unit. They also sought injunctive relief in the form of a judicial declaration that the Joneses' activities "violated San Diego residential zoning restrictions and noise ordinances." They alleged there was "*no other option* but to suspend the alleged unlawful and nuisance activities so as to allow for [the Sensemans] to be able to use and enjoy their subject property." (Italics added.) They specifically sought a permanent injunction directing the Joneses "to stop and cease all commercial and vacation rental enterprise" in their unit.

In a verified answer, the Joneses denied the allegations and asserted several affirmative defenses. They specifically denied that they violated state and local zoning laws and the zoning-related CC&Rs by using their unit as a short-term vacation rental.

7

Before trial, both parties asked the trial court to rule on whether the Joneses violated state or municipal zoning law by using their unit as a short-term vacation rental. The parties extensively briefed this question in their joint trial readiness report, trial briefs, and motions in limine. In November 2022, the court ruled in favor of the Joneses and dismissed the negligence per se cause of action. Pursuant to the parties' stipulation, the court treated its ruling as having been made pursuant to a motion for dismissal by the Joneses. In accordance with this ruling, the jury was not given a negligence per se instruction and was not instructed to consider whether the Joneses breached the provisions of the CC&Rs that related to zoning by violating state or municipal law.[5]

The case proceeded to trial in December 2022 and lasted four days. The jury found for the Sensemans on their causes of action for private nuisance and breach of the non-zoning related CC&Rs. On December 9, the jury awarded the Sensemans damages for loss of use in the amount of $533.30, for out-of-pocket loss in the amount of $1,186.85, and for mental distress in the amount of $500.

### III.

### *Postverdict Proceedings*

After the jury's verdict, the trial court considered whether to order injunctive relief, and if so, the nature of the relief that should be ordered. In their trial brief, the Sensemans continued to seek an order prohibiting all commercial use of the Joneses' condominium unit as a short-term vacation rental.

---

[5] The jury was instructed to consider whether the Joneses violated the plain language of Section 4.2 of the CC&Rs before it was amended by renting the premises out for periods less than 30 days.

8

In response, the Joneses asserted there was no longer any legal basis to grant an injunction shutting down their business. The trial court had ruled that short-term rentals in the complex were not prohibited by the laws in effect from 2017 to 2022, and it had dismissed the Sensemans nuisance per se claim and refrained from instructing the jury to consider whether the Joneses violated zoning-related provision of the CC&Rs. The CC&Rs, moreover, as properly amended in December 2020, now specifically permitted short-term rentals in the condominium complex.[6] Citing Civil Code[7] section 3482, which provides that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance," the Joneses argued the court could not as a matter of law prohibit them entirely from using the unit as a short-term rental.

In addition to the trial court's favorable rulings, the Joneses argued their business could not be enjoined entirely because SDMC contained a newly enacted provision that expressly permitted short-term rentals in Mission Bay. In support of this last point, the Joneses offered into evidence a Short-Term Residential Occupancy License obtained by Lacy Jones for the unit.

In reply, the Sensemans adjusted their request for relief. Instead of a complete ban, they asked the trial court to enjoin short-term rentals by the Joneses until "physical improvements [were] made . . . to ensure that noise an[d] sound transmission reductions have been instituted in a sufficient manner to the satisfaction of the [c]ourt." (Boldface omitted.) To help in this

---

[6] As mentioned, the amendment took place before the Sensemans filed suit.

[7] Undesignated statutory references are to the Civil Code.

9

regard, they asked the court to appoint a special master, at the Joneses' expense, "to recommend and approve, . . . proposals [by] sound and acoustical engineers, consultants and/or contractors[,] . . . appropriate and sufficient sound attenuation measures and improvements including, but not limited to, consideration of improvements to structural, flooring, furnishings, and appliances." (Boldface omitted.) As the court observed, "the relief originally sought for the injunction in the complaint was draconian, which is cease and desist basically . . . doing short-term rentals. "But now . . . the relief sought . . . has been pared down somewhat and actually been put into practical terms."

The Joneses objected to the appointment of a special master. They argued the Sensemans had the burden to adduce expert testimony of modifications to the Joneses' unit that could effectively reduce sound transmission. In the Joneses' view, "[t]he Sensemans had the burden of proof and to the extent they disputed [Michael] Jones' testimony that there are no physical improvements to be made short of a retrofit of the building to reduce sound transmission, they should have presented the evidence to support their claim, not demand the Jones[es] . . . pay for further analysis posttrial."

The trial court ruled on the Sensemans' request for a permanent injunction on May 11, 2023.[8] The written ruling stated:

> "The order to [the Joneses] is to abate the disturbing and inordinate noise arising from the use of the[ir] condominium as a short-term rental. The [c]ourt orders both parties to a special master who will determine what noise would be expected in a normal living situation as against the extant inordinate noise that formed the basis of the jury's finding on the [n]uisance

---

[8] The court modified its ruling on October 13, 2023. The parties have not identified any relevant changes.

[c]ause of [a]ction, and likely was the basis of the jury's verdict on the [b]reach of CC&Rs [c]ause of [a]ction."

"The [s]pecial [m]aster will offer a master plan for [the Joneses] to abate that noise, carefully balancing the proposed measures against reasonable expense. The [s]pecial [m]aster shall consider the special, unique nature of this beach community and the noises that are common there, 'come with the territory', which do not exist in other residential areas. The [s]pecial [m]aster shall also consider that the . . . Jones[es] are now permitted by law to use their property as a short-term vacation rental, both by the authority of the condominium CC&Rs and by the appropriate public entity licensure. As to routine and baseline noises characterized by this beach community, the [c]ourt orders no remediation or abatement measures as [the Sensemans] assumed the risk of those conditions upon purchase of their unit.

"The special master shall prepare a written report with recommendations which will be presented to the [c]ourt for final determination of the plan. The [c]ourt will hear the comments of the attorneys before making a final ruling on the plan. Although the [c]ourt understands that [the Joneses] have only sought to utilize their beach property in good faith as an investment, in this [c]ourt of [e]quity, the court is compelled to order that the cost of the special master shall be borne by [the Joneses] as bolstered by the jury's verdict."

Although the trial court expressly reserved "making a final ruling" on the injunction, it signed and filed a proposed judgment drafted by the Sensemans on July 19, 2023. The proposed judgment stated that the Sensemans were the prevailing parties. Important here, the proposed judgment made no mention of the court's ruling that the Joneses' use of the unit did not violate state or local zoning law, nor of its dismissal of the Senseman's cause of action for negligence per se. It stated that the court found the Sensemans had prevailed on "each of their claims and causes of action in the [c]omplaint." (Italics omitted.) The proposed judgment provided, "a permanent injunction is hereby granted and [it is] ordered that

11

[the Joneses], jointly and severally, abate the disturbing and annoying noise arising from the use of the Jones[es]' property . . . as a short-term rental.  A [s]pecial [m]aster shall be appointed to investigate and create a master plan for abatement for the [c]ourt to consider and make a final determination of the plan for abatement.  The cost for the [s]pecial [m]aster shall be born and paid for by [the Joneses]."  The Joneses objected to the proposed judgment on the ground it was premature.

On May 28, 2024, after the special master issued his report, the trial court awarded $138,875 in attorney fees and $10,888 in costs to the Sensemans, for a total of $149,763.  The Joneses asserted the court's determination that the Sensemans were the prevailing parties was premature because "the [c]ourt ha[d] not made its final ruling on the scope of abatement work required following issuance of the special master's recommendation."  The court rejected that contention, and confirmed its prior ruling that the Sensemans were the prevailing parties.  Important here, the court based its determination on a finding that the Sensemans "achieved their main litigation goal, . . . [and] [the Joneses] *did not obtain anything*." (Italics added.)

The trial court made its final ruling regarding injunctive relief on June 17, 2024.  We discuss the details of that ruling later in our analysis of the issues on appeal.

## DISCUSSION

### I.

### *Appealability*

On August 1, 2024, the Joneses filed a notice of appeal.  The notice of appeal attached two written rulings by the trial court:  (1) the ruling entered on July 19, 2023, after the jury's verdict (2023 ruling), and (2) the ruling

12

entered on June 3, 2024, after the special master's final report (2024 ruling). Language in both rulings states they are the "judgment" of the court. But there can be no more than one final, appealable judgment between parties to a civil action. (See e.g., *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 652 (*Meinhardt*).)

Given the apparent discrepancy, we provided the parties with an opportunity to submit letter briefs addressing the nature of the two rulings and whether the Joneses timely appealed from the final judgment between the parties. We allowed them to address the question further in their substantive briefs on the merits as well as at oral argument.[9] We observed that, if the 2023 ruling was the final judgment between the parties, the notice of appeal would be untimely with respect to that ruling because a notice of appeal must be filed no later than 180 days after entry of the judgment or order being appealed. (Cal. Rules of Court, rule 8.104(a)(1).) However, as we also observed, the appeal would still be timely with respect to the 2024 ruling.

Having reviewed the arguments on both sides, we conclude the 2024 ruling is the one final judgment between the parties in the instant action. The 2023 ruling was interlocutory and not appealable. An appeal must be taken " 'from a final judgment that is not intermediate or nonfinal but is the one final judgment.' " (*Meinhardt, supra,* 16 Cal.5th at p. 652.)

"A judgment is the *final* determination of the rights of the parties." (Code Civ. Proc., § 577, italics added.) To determine whether an adjudication

---

9    The Sensemans contend the law of the case doctrine binds us to our preliminary determination that the Joneses' notice of appeal from the 2023 order was untimely. They are incorrect. The doctrine applies to decisions made in prior appeals. (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)

13

is final and appealable, " '[i]t is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698.)

Here, the 2023 ruling provided the Sensemans were "entitled to a permanent injunction to prevent future breaches and violations of . . . the CC&Rs that obstruct[ ], interfere[ ], or annoy[ ] [the Sensemans] and the use of their property." The trial court further specifically ruled, "[A] permanent injunction is hereby granted and ordered that [the Joneses], jointly and severally, abate the disturbing and annoying noise arising from the use of the[ir] property . . . as a short-term rental." But the court expressly left open for later decision the specific provisions of the injunction.

The trial court directed the appointment of a special master "to investigate and create a master plan for abatement for the [c]ourt to consider and make a final determination of the plan for abatement." In the minute order incorporated by reference into the ruling, the court directed further proceedings and the "final ruling" to take place as follows: "The special master shall prepare a written report with recommendations which will be presented to the [c]ourt for final determination of the plan. The [c]ourt will hear the comments of the attorneys *before making a final ruling on the plan*." (Italics added.)

14

Based on this express language by the trial court as well as the subsequent proceedings that did in fact take place, the 2023 ruling was not a final judgment because it expressly left open for consideration details about the abatement injunction that were essential to a final determination of the parties' rights. We therefore hold the Joneses' appeal from the 2024 ruling was an appeal from a final judgment between the parties.

## II.

### *Permanent Injunction*

The Joneses contend the injunction ordered by the trial court "is impermissibly vague, making it impossible to reasonably follow or enforce." (Capitalization omitted.) We disagree. But as we explain, the Joneses' argument misapprehends the terms of the injunction. Our review is de novo. (*Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1166.)

An injunction "must be sufficiently precise to provide a person of ordinary intelligence fair notice that her contemplated conduct is forbidden." (*In re Marriage of Hartmann* (2010) 185 Cal.App.4th 1247, 1250.) "A directive 'in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' " (*In re Berry* (1968) 68 Cal.2d 137, 156.)

The injunction imposed by the trial court here consists of three directives. First, it requires the Joneses to include the following terms as part of their lease agreements with all prospective tenants:

> " 'The owners of the unit directly below this unit purchased their condominium before the other units were leased as short-term vacation rentals. The use of our unit as a short-term vacation rental represented a major change for them in terms of noise levels. We recognize, however, that they deserve the peaceful and quiet enjoyment of their condominium.

15

" '*Please make every effort to keep the noise level down by ascending and descending the staircase as calmly and as quietly as possible, using soft shoes, sandals, flip flops or bare feet if possible, and being careful not to drop or drag objects onto the steps.*

" 'Likewise, please be mindful that the owners of the unit below may be disturbed by inordinate noise coming from within the unit directly above them. *Please make every effort to walk calmly within this vacation rental, and to not stomp, jump or run in this unit. Please make every effort not to drop objects, like luggage, recreational materials, or other hard or heavy items onto the floors. And please refrain from any other behavior that might generate inordinate noise and disturb the owners/tenants below.*

" 'By signing this document, you agree to abide by its terms and conditions. Failure to abide by these terms may constitute a breach of the rental agreement.' "

Second, the Joneses are to place a sign "at the top of the stairs on their landing" that states: " '*Please try to be as calm and quiet as possible in ascending and descending this stairway to avoid disturbing the owners/tenants below. Please avoid dropping or dragging objects on the stairway.*' "

Third, the Joneses must replace their existing living room carpet pad with an "acoustic carpet underlayment/'pad' . . . comprised of flexible mass-loaded barrier (to absorb/reduce impact noise transfer), fused to high-density premium foam."

There is nothing vague about the injunction's directives to (1) add specified terms to the lease agreement for the condominium unit, (2) post a sign with specified terms on the staircase landing, and (3) replace the unit's living room carpet pad. The Joneses misunderstand these obligations. The plain language of the injunction does not require them to guarantee compliance by their tenants with the requests made in the lease terms, nor in

16

the sign posted at the top of the stairs. They are required only to make the requests of their tenants.[10] We uphold the trial court's injunction.

## III.

### *Damages*

As mentioned, the jury awarded the Sensemans total damages of $2,220.15, consisting of loss of use in the amount of $533.30, out-of-pocket loss in the amount of $1,186.85, and mental distress damages in the amount of $500.[11] The Joneses contend insubstantial evidence supports two components of the jury's damages award, out-of-pocket loss and loss of use. We are not persuaded.

We review the amount of a jury's verdict awarding damages for substantial evidence. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 614.) "In reviewing a claim of insufficiency of evidence, the appellate court must consider the whole record, view the evidence in the light most favorable to the judgment, presume every fact the trier of fact could reasonably deduce from the evidence, and defer to the trier of fact's determination of the weight and credibility of the evidence." (*Ibid.*)

Starting with the loss of use damages, the Joneses contend the Sensemans' testimony that they needed to lower the rent they charged for the unit during the school year was speculative and cannot be squared with the jury's award of $533.30. They call the amount a "random figure." But trial counsel for the Joneses explained a reasonable basis for the award at the court trial on the Sensemans' request for injunctive relief. In counsel's words,

---

10    Counsel for the Sensemans conceded this point at oral argument.

11    We observe the trial court's judgment appears to contain two typographical errors with respect to the amounts awarded by the jury. The discrepancy erroneously increases the total award by $32.30 in the Sensemans' favor.

the Sensemans "spent five days, in August, having the paint applied. They couldn't live [in the unit]. They couldn't rent it out. They weren't there for five days. The painters were in there putting on the sound-deadening paint. At the time, they were renting the property for $3200 a month. [¶] . . . So, if you divide 3200 by 30 days, you get a daily rate of a hundred-and-such-and-so. Multiply it by the five days, and you get right to the penny of 533.33. So that was the loss of use." We find this explanation plausible and supported by substantial evidence.

Turning to out-of-pocket loss, the parties agree the $1,186.85 awarded by the jury was for " 'sound deadening paint' " and labor by painters who painted the Sensemans' ceiling. Mark Senseman testified that he "did a Google search" about potential sound mitigation measures, and spoke with a friend who was an architect. Based on what Mark learned, the Sensemans had the ceiling painted with "sound-deadening paint," which Mark described to be a ceramic-based paint made by High Tech Solutions. Mark supported his testimony with receipts. Unfortunately, the paint did nothing to deaden the sound.

The Joneses contend the award for this expense was based improperly on speculation because there was no showing made by an expert that sound deadening paint had any potential to mitigate the noise. They argue, "The Sensemans performed no due diligence to determine whether that paint would reduce any sound transmission from the Joneses' unit or the adjacent common area stairwell; they did not consult with a sound mitigation expert about that paint, nor did they talk to another customer who had used that paint product to determine its efficacy."

Applying the substantial evidence standard, we reject the Joneses' contention. We defer to the jury with respect to the reasonableness of

Sensemans' research and reliance on an architect's suggestion to try painting the ceiling with ceramic-infused paint as a potential measure to mitigate the noise. There was no objection to Mark Senseman's testimony on hearsay grounds. The Joneses proffered no expert testimony of their own that sound deadening paint does not work or would not work under the circumstances. We have no basis to conclude it was inherently unreasonable for the Sensemans to try painting the ceiling at the suggestion of an architect.

For all these reasons, we affirm the jury's award with respect to both loss of use and out-of-pocket damages.

IV.

*Attorney Fees*

As recounted, after the jury trial, the Sensemans sought an award of attorney fees and costs. The trial court ruled on the motion in a minute order in May 2024, and later incorporated that order into its final judgment. The motion was made pursuant to section 5975 and pursuant to section 1717 based on an attorney fees provision in the CC&Rs. The court found the Sensemans were the prevailing parties under section 5975 and awarded them $138,875 in attorney fees.

The Joneses contend the trial court erred when it determined the Sensemans were the prevailing parties. (Capitalization omitted.) Our review of this issue is for abuse of discretion. (*Artus v. Gramercy Towers Condominium Assn.* (2022) 76 Cal.App.5th 1043, 1050.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43

19

Cal.4th 706, 711–712, fns. omitted.)  Because the trial court here based its decision on an erroneous factual finding, and erroneously believed it was not ruling prematurely, we agree with the Joneses there was an abuse of discretion.

The Davis-Stirling Act Common Interest Development Act governs actions to enforce the governing documents of condominiums and other common interest developments.  (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 258 (*Rancho Mirage*).)  In such actions, the Davis-Stirling Act provides for the recovery of attorney fees as follows:  "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs."  (§ 5975, subd. (c).)

"The analysis of who is a prevailing party under the fee-shifting provisions of the [Davis-Stirling] Act focuses on who prevailed 'on a practical level' by achieving its main litigation objectives."  (*Rancho Mirage*, *supra*, 2 Cal.App.5th at p. 260.)  When determining a party's litigation objectives in cases involving an alleged breach of CC&Rs, courts have generally followed the analysis that is used to determine the prevailing party when attorney fees are awarded in breach of contract actions pursuant to section 1717.  (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 774.)  Courts accordingly "compare *the relief awarded* on the contract claim or claims *with the parties' demands* on those same claims *and their litigation objectives* as disclosed by the pleadings, trial briefs, opening statements, and similar sources."  (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876, (*Hsu*) italics added.)  Thus, "[t]he prevailing party determination is . . . made . . . by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' "  (*Ibid*.)  Important here, the

20

determination is to be made only upon final resolution of the relevant claims. (*Ibid.*)

As a threshold matter, whenever the statutory conditions have been satisfied, the prevailing party is entitled to fees as a matter of right. (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 590.) As explained by the California Supreme Court in the context of section 1717 awards, this means trial courts have no discretion to deny attorney fees to a defendant who has obtained a "simple, unqualified victory." (*Hsu*, *supra*, 9 Cal.4th at p. 877; *id* at pp. 875—877.) "Similarly, a plaintiff *who obtains all relief requested* on the only contract claim in the action must be regarded as the party prevailing on the contract for purposes of attorney fees under section 1717." (*Id.* at p. 876, italics added.) Here, the Sensemans did not obtain all the relief they requested, and so, we do not agree with our dissenting colleague that they were entitled to fees as a matter of right.[12]

Starting with the trial court's legal error, the court erroneously treated the 2023 ruling as its final judgment. But as we have explained, the 2023 ruling expressly left open for decision the precise details of the abatement injunction that were essential to a final determination of the parties' rights. Without a final determination of those rights, it was premature for the trial court to "compare the relief awarded . . . with the parties' demands . . . and

---

[12]   Because we do not agree the trial court had an obligation to choose the Sensemans as the prevailing party, we conclude the case law cited by our dissenting colleague, which discusses equitable adjustments to the amount of attorney fees awarded in such situations, is inapposite to our analysis. We observe, in addition, that neither party asked us to address the reasonableness of the fee award and whether it should be adjusted downward based on the Senseman's "degree[ ] of success." (Dis. opn., *post*, at p. 5.) It is not our role to act as advocates on behalf of the parties by conducting our own legal research and analysis. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

21

their litigation objectives." (*Hsu, supra*, 9 Cal.4th at p. 876.) "[A] disposition that rests on an error of law constitutes an abuse of discretion." (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)

Turning to the trial court's factual findings, the trial court premised its determination that the Sensemans were the prevailing parties on a finding that they prevailed on "each of their claims and causes of action." But the Sensemans manifestly did not prevail on each of their causes of action or, critical here, on each of their claims for relief. The Sensemans asserted the Joneses violated the CC&Rs because the use of their unit as a short-term rental violated a host of state and local zoning laws. With respect to their claim for breach of the CC&Rs that relate to zoning, they sought "preliminary and permanent injunctive relief to enforce the CC&Rs and prohibit [the Joneses] from utilizing [their condominium unit] as a commercial rental and hotel property." The court ruled the use of their property as a short-term rental did not violate state or local law, and the Sensemans, as a result, were not entitled to an expansive injunction prohibiting their vacation rental business entirely. Accordingly, it is not correct for the court to say, as it did in its ruling, that the Joneses "did not obtain anything." The Joneses achieved *their* litigation goal of keeping their rental business in operation as a going concern. "A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.)

The defeat of the Sensemans' zoning-law-based claims was critical, moreover, to the defeat of their main litigation objective. As our dissenting colleague points out (dis. opn., *post*, at p. 1), the trial court determined that the Sensemans' main litigation goal was "the abatement of the nuisance caused by [the Joneses'] operation of a short-term rental" in their

22

condominium unit. Although the record supports this finding of fact as a general proposition, it is important to consider the details of that goal. The Sensemans specifically sought an abatement injunction prohibiting the Joneses from operating their short-term rental business *entirely*—a complete ban. The Sensemans alleged in the complaint that there was "no other option but to suspend the alleged unlawful and nuisance activities so as to allow for [them] to be able to use and enjoy their subject property." And they sought a permanent injunction directing the Joneses "to stop and cease all commercial and vacation rental enterprise" in their unit. The Sensemans were unable to achieve this specific goal precisely because the trial court ruling that their zoning-law based claims were invalid meant the court could not enjoin the Joneses entirely from operating a short-term rental business. (§ 3482 ["[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance"].)

After the dismissal of the nuisance per se claim, the Sensemans downgraded their main litigation goal and asked the trial court to enjoin short-term rentals by the Joneses until "physical improvements [to the property] are made . . . to ensure that noise an[d] sound transmission reductions have been instituted in a sufficient manner to the satisfaction of the [c]ourt." (Boldface omitted.) They sought, as an alternative, "significant physical modifications" to the unit and rental use restrictions consisting of (1) installation of "sound deadening, shockproof, Sorbothane material between metal angle iron brackets and pre-cast concrete stair treads" in the stairwell, (2) payment for regular inspections of the Sorbothane material, "not less than once per year," (3) removal and replacement of the carpet and pad throughout the condominium unit, (4) replacement of "all hard-surface flooring," (5) installation of "cabinet door bumpers or soft-closing restrictions on all

23

kitchen cabinet doors and drawers," (6) removal of the Joneses' trash compactor, (7) occupancy restriction to "6 persons maximum for all reservations and occupancy," (8) prohibition of the use of "a pull-out sofa bed in the living room," (9) "a minimum 3-night stay by any reservation," and (10) notification to guests that "occupants may not arrive (move-in) or depart (move-out) except between the reasonable hours of 7:00 a.m. and 10:00 p.m." Of the 10 demands, the trial court ordered only three: replacement of the living room carpet pad, posting of a sign at the top of the stairwell requesting "calm and quiet" when ascending and descending the stairway, and, as part of the rental agreement for the condominium, a request to renters to "make every effort" to refrain from generating "inordinate noise" in the rental unit and to "keep the noise level down" when using the stairs. (Italics omitted.)

In the Joneses' view, this was a "nominal outcome" even with respect to the Sensemans' revised litigation goals. We agree. The trial court erred when it ruled prematurely before it could consider this extraordinarily limited result as against years of litigation and $138,000 in attorney fees.

Although not necessary to our decision, we also agree with the Joneses that the Sensemans did not achieve their litigation goals, as a practical matter, in terms of damages either. They originally sought $524,186.85 in damages, consisting of "[d]iminution in value" of their condominium unit of $300,000; loss of use and enjoyment in the amount of $48,000.00; mental and emotional distress in the amount of $175,000; and mitigation damages in the amount of $1,186.85. In "stark contrast," the jury awarded total damages of $2,220.15, consisting of loss of use in the amount of $533.30, out-of-pocket loss in the amount of $1,186.85, and mental distress in the amount of $500. As the Joneses observe, this amount was less than "99% of what they sought," and it could have been "achieve[d] in Small Claims court."

24

On this record, we conclude it was an abuse of discretion to rule the Sensemans were prevailing parties.  (C.f., *Harris v. Rojas* (2021) 66 Cal.App.5th 817, 824–826; *id*. at p. 824 ["recovering five or six thousand dollars on a demand for $200,000 obviously is not a 'simple, unqualified' win"].)

## DISPOSITION

The trial court is directed to strike the attorney fee award and modify the judgment to provide that neither party prevailed.  As modified, the judgment is affirmed.  Each party shall bear its own costs.  (Cal. Rules of Court, rule 8.278(a)(3).)

DO, J.

I CONCUR:

KELETY, J.

25

O'Rourke, Acting P. J.,

Dissenting:

I respectfully dissent.  In this case, the Sensemans brought two causes of action to enforce homeowner association CC&Rs against their fellow homeowners, the Joneses, with one overarching goal: to obtain peace and quiet in their unit and relief from the loud, annoying noises coming from the Joneses' short-term vacation tenants.  The jury reached verdicts in the Sensemans' favor on both causes of action and the trial court issued them a permanent injunction ordering the Joneses to "abate the disturbing and annoying noise arising from the use of the[ir] property . . . as a short term rental."  Under these circumstances, the court's determination that the Sensemans prevailed so as to entitle them to reasonable attorney fees and costs was not only well within its discretion, but it was the *only* discretion it had under Civil Code section 5975 of the Davis-Stirling Act.[1]  That is, the Sensemans' win satisfied the statutory conditions of that law, making an award of attorney fees mandatory to them.  (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1082 ["An award of attorney fees to the prevailing party is mandatory in [an action to enforce common interest development CC&Rs]"]; *Champir, LLC v. Fairbanks Ranch Association* (2021) 66 Cal.App.5th 583, 590 ["prevailing party is entitled to attorney fees ' "*as a matter of right*" ' and the trial court is ' "*obligated* to award attorney fees . . . whenever the statutory conditions have been satisfied" ' "]; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 160 ["[W]here . . . a statutory fee provision *mandates* fees to a prevailing party [the court] having found a party to be prevailing under

---

[1]     Undesignated statutory references are to the Civil Code.

such a provision . . . has no discretion to decline to render an award of reasonable attorney fees"].)

The relevant review standard, which the majority does not completely summarize, requires that we inquire whether the court's prevailing party decision " 'exceeds the bounds of reason' [citation] or . . . is arbitrary capricious, patently absurd, or even whimsical." (*Artus v. Gramercy Towers Condominium Association* (2022) 76 Cal.App.5th 1043, 1051; see also *Champir, LLC v. Fairbanks Ranch Association*, *supra*, 66 Cal.App.5th at p. 592; *Almanor Lakeside Villas Owners Association v. Carson* (2016) 246 Cal.App.4th 761, 774.) The Sensemans' verified complaint lists only two causes of action—a cause of action to enforce the CC&Rs and a nuisance cause of action asserting two theories of nuisance—in addition to the equitable remedies of declaratory and injunctive relief (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173 ["injunctive and declaratory relief are equitable remedies, not causes of action"]; *Granny Purps, Inc. v. County of Santa Cruz* (2020) 53 Cal.App.5th 1, 9 ["*injunctive* relief is a remedy rather than a standalone cause of action"]. Both causes of action expressly, or in effect, sought to enforce the CC&Rs. The trial court did not legally or factually err by determining that the Sensemans prevailed on all of their causes of action.[2]

It is of no moment that the Sensemans did not succeed on the legal theory of nuisance per se, or obtain all of their requested damages. The Sensemans also alleged in their nuisance cause of action that if no per se nuisance was found, the Joneses' conduct "in renting the[ir] . . . property as a

---

[2] Regardless, we review the trial court's attorney fee ruling, not its reasoning. (*Travis v. Brand* (2023) 91 Cal.App.5th 996, 1006 ["we review results and not reasoning. In other words, we do not reverse a correct result because a court gave an incorrect reason for it"].)

vacation rental has, and continues to, cause vibrations and noises that are offensive to the senses and result in [the Sensemans'] loss of free use and loss of enjoyment . . . so as to interfere with their comfortable use and enjoyment of life by [the Sensemans] in and at the Senseman Property." This was in substance and effect a claim that the Joneses comply with CC&Rs in place (CC&Rs sections 4.5 and 4.9) prohibiting annoyances, unreasonable noise, and *nuisances* to other owners. When, as here, the relevant attorney fee statute does not define what is a prevailing party, " ' "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement or otherwise. [Citation.]" [Citation.] In assessing litigation success, *Hsu v. Abbara* (1995) 9 Cal.4th 863, 877 . . . instructs: "[C]ourts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." ' " (*Graciano v. Robinson Ford Sales, Inc.*, *supra*, 144 Cal.App.4th at pp. 150-151; see also *Champir, LLC v. Fairbanks Ranch Assn.*, *supra*, 66 Cal.App.5th at p. 596 ["In determining litigation success, the court respects substance rather than form"]; *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1048.)

Here, the Sensemans achieved jury verdicts in their favor on both causes of action; the fact some of their theories were unsuccessful or they recovered a smaller damages amount than requested does not detract from the achievement of their main litigation goal of enforcing the CC&Rs prohibiting unreasonable noise and nuisances on the property. Indeed, in *Almanor Lakeside Villas Owners Association*, the Court of Appeal affirmed an

attorney fee and costs award of $101,803.15 in an association's favor even though out of $54,000 in dues, fees, fines and interest it sought from homeowners, the court awarded it $6,620, finding only eight out of 88 fines to be reasonable. (*Almanor Lakeside Villas Owners Association v. Carson, supra,* 246 Cal.App.4th at pp. 767-768, 775, fn. 6.) "Insofar as the court found that some of the fines were enforceable, [the association] met its objective and satisfied the first part of the statutory criteria under the Davis-Stirling Act 'to enforce the governing documents.' [Citation.] The fractional damages award does not negate the broader, practical effect of the court's ruling, which on the one hand narrowed the universe of restrictions that [the association] could impose on the properties, but on the other hand cemented [the association's] authority to promulgate and enforce rules pursuant to the CC&Rs so long as they are not unreasonable . . . ." (*Id.* at p. 775.) So it is here, where the Sensemans achieved their main litigation goal, as the trial court correctly found. This is the case notwithstanding the court's decision to implement only some of the Senseman's sought-after modifications.

The majority proceeds to discuss section 1717, under which a court must award attorney fees in a contract action when a party has obtained a "simple, unqualified victory." (See *Hsu v. Abbara, supra,* 9 Cal.4th at p. 877; *Scott Co. of California v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.)[3] But here, the trial court awarded attorney fees under section 5975, and thus "[t]he analysis of who is a prevailing party . . . focuses on who prevailed 'on a

_____

[3]  To support its conclusion the majority also cites *Harris v. Rojas* (2021) 66 Cal.App.5th 817, a case in which the plaintiff on his contract claim obtained a small monetary recovery relative to his demand, and the record gave the appellate court no other basis than that for assessing the plaintiff's litigation objective. (*Id.* at p. 824.) On that "minimal record, [the plaintiff's] litigation objective . . . was purely quantitative" and determined by the amount of money sought. (*Id.* at p. 825.)

practical level' by achieving its main litigation objectives; the limitations applicable to contractual fee-shifting clauses, codified at section 1717, do not apply." (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 260; see also *Parrott v. Mooring Townhomes Assn., Inc.* (2003) 112 Cal.App.4th 873, 879-889 [declining to apply section 1717 where party sought recovery of fees under predecessor to section 5975].) It is true that *Almanor* referenced the California Supreme Court's explanation of how a trial court should view the parties' demands, relief obtained, and litigation objectives so as to make a prevailing party determination "in the related context" of prevailing party determinations under section 1717. (*Almanor Lakeside Villas Owners Association v. Carson*, *supra*, 246 Cal.App.4th at p. 774.) But, as *Almanor* itself demonstrates, a "simple, unqualified victory" or the party "obtain[ing] all the relief they requested" (maj. opn., *ante,* at p. 21) is not the predicate for an award of attorney fees under section 5975. (*Almanor*, at pp. 767-768, 775, fn. 6.)

Nor was the trial court's decision premature. Once the court determined the Sensemans had prevailed on their causes of action and were entitled to permanent injunctive relief in their favor to abate the noise nuisance, it properly decided the question of their litigation success. The "precise details" in implementing the injunction to abate the nuisance had no import to the prevailing party determination. Such details were not essential to a final determination of the Senseman's claims to enforce the CC&Rs. This conclusion accords with *Hsu v. Abbara, supra*, 9 Cal.4th 865, in which the court held in the section 1717 context that the "prevailing party determination is to be made only upon final resolution *of the contract claims* . . . ." (*Id*. at p. 876, italics added.)

5

In *Almanor*, the trial court did not reduce the amount of fees sought for the association's partial success. (*Almanor Lakeside Villas Owners Association v. Carson*, *supra*, 246 Cal.App.4th at p. 769.) The Court of Appeal upheld that decision, even though it acknowledged the court could have reduced the amount of the award to reflect the incomplete success of the action. (*Id*. at p. 782.) Reviewing cases addressing justifications for reducing attorney fee awards in instances of varying degrees of success (*id*. at pp. 779-781), the *Almanor* court found "no indication that 'degree of success' may not be considered, alongside other appropriate factors, in determining reasonable attorney's fees . . . including under . . . section 5975." (*Id*. at pp. 781-782.) Thus, " '[t]o the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward.' " (*Ibid*.) But in *Almanor*, "ample factors" supported the lower court's decision to award the entire amount of fees and costs requested: "[The association] prevailed on only a minor subset of the fines that formed the basis for the monetary award requested, but that subset was sufficient to satisfy the statutory criteria of an action to enforce the governing documents. ([ ] § 5975[, subd.] (c).) In practical effect, [the association's] limited success established a baseline from which it can continue to adopt and enforce reasonable use restrictions under the CC&Rs. . . . [T]he objectives that [the association] failed to attain were primarily monetary. With respect to the time spent on the successful and unsuccessful aspects of [the association's] suit [citation], we note that the various fines do not represent different causes of action or legal theories dependent on different facts, but different instances of attempted enforcement based on the CC&Rs and a shared set of facts. [The association's] fees, as established in its moving papers and supporting declarations, also accounted for its defense against the [homeowners'] cross-

6

complaint, which included the [homeowners'] use of testifying expert witnesses.  For these reasons, we do not find that the award of attorney's fees, compared to the 'overall relief obtained' by [the Association], was so disproportionate as to constitute an abuse of discretion." (*Almanor*, at pp. 782-783.)

While in my view an attorney fee award to the Sensemans is mandatory, the trial court must nevertheless consider all of the circumstances in light of the principles expressed above and exercise its "broad authority in determining the reasonableness of [such an] award." (*Almanor Lakeside Villas Owners Association v. Carson, supra*, 246 Cal.App.4th at p. 779, citing *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  I would reverse the attorney fees and costs award and remand the matter, directing the trial court to determine the reasonable amount of fees and costs that the Sensemans should recover.

O'ROURKE, Acting P. J.

7